UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION

UNITED STATES OF AMERICA,      )  CASE NO:  2:08-CR-27-GMN-LRL
                               )
              Plaintiff,       )        CRIMINAL
                               )
     vs.                       )     Las Vegas, Nevada
                               )
GREGORY HOFFMAN,               )     Monday, April 26, 2010
                               )
              Defendant.       )     (3:24 p.m. to 4:24 p.m.)

SENTENCING AND DISPOSITION

BEFORE THE HONORABLE ROBERT C. JONES,
UNITED STATES DISTRICT JUDGE

Appearances:            See Next Page

Court Reporter:         A. Bareng, FTR

Courtroom Administrator: K. Johnson

Transcribed by:         Exceptional Reporting Services, Inc.
                        14493 S. Padre Island Drive
                        Suite A-400
                        Corpus Christi, TX 78418-5940
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES FOR:**</u>


**Plaintiff:**              **NANCY KOPPE, ESQ.**
                          **U.S. Attorney's Office**
                          **333 Las Vegas Blvd. So.**
                          **Suite 5000**
                          **Las Vegas, NV 89101**

**Defendant:**             **TODD LEVENTHAL, ESQ.**
                          **Leventhal & Flangas**
                          **600 South Third**
                          **Las Vegas, NV 89105**

**U.S. Probation:**        **Wendy Beckner**

1          **Las Vegas, Nevada; Monday, April 26, 2010; 3:24 p.m.**

2                          **(Call to Order)**

3          **THE COURT:**  This is the time set for sentencing in

4    the case of *the United States versus Gregory Hoffman*.

5    Appearances, please.

6          **MS. KOPPE:**  Good afternoon, your Honor.  Nancy Koppe

7    for United States.

8          **MR. LEVENTHAL:**  Good afternoon, your Honor.  Todd

9    Leventhal on behalf of Mr. Hoffman, who is present in custody.

10          **THE COURT:**  And any reason why we should not proceed?

11          **MR. LEVENTHAL:**  No, your Honor.

12          **THE COURT:**  This is the time set for sentencing,

13    Mr. Hoffman, in Case Number 2:08-0027.

14          On November 30th, 2009, you appeared before the Court

15    and entered a plea of guilty to transporting child pornography,

16    a violation of 18 U.S.C. Section 2252(a)(A)(1) and a separate

17    count:  stalking, a violation of 18 U.S.C. Section

18    2261(a)(2)(A).

19          I've reviewed the presentence report and the plea

20    agreement.  The Court accepts your guilty plea at this time and

21    adjudicates you guilty of these charges.

22          Counsel, let's proceed first with the presentence

23    report.  You've read the report and reviewed it with

24    Mr. Hoffman?

25          **MR. LEVENTHAL:**  Yes, your Honor.  May we approach, or

4

1   do you want us here?

2        **THE COURT:**  Just there for -- and when we're done,

3   I'll let you approach.

4        **MR. LEVENTHAL:**  Yes, your Honor, I have reviewed the

5   presentence report with my client.

6        **THE COURT:**  And do you need to enter objections or

7   comment about paragraphs of the report?

8        **(Pause / Counsel confers with client)**

9        **MS. KOPPE:**  Your Honor, I'm sorry, are you waiting --

10  you're still waiting for them.

11       **(Pause / Counsel confers with client)**

12       **MR. LEVENTHAL:**  The only objection we would have,

13  your Honor, is under Paragraph 14 at the bottom.  In the plea

14  agreement, Mr. Hoffman never agreed to that.  He wanted me to

15  make sure that the Court was aware that during the plea

16  agreement, under Paragraph 9, it was stricken that the still

17  captioned photograph of a video of prepubescent Kay performing

18  oral sex on an adult male was stricken from the proba -- from

19  the plea agreement and it showed up here on the presentence

20  report.

21       **THE COURT:**  Uh-huh.  That's fine, but do you object

22  to this statement in the presentence report?  Do you want the

23  Government to prove that item?

24       **MR. LEVENTHAL:**  Yes, that one of the known images

25  from this series which was sent by Hoffman to Kay's friend, who

1    was then a minor, is a still image taken from a video of a

2    prepubescent Kay performing oral sex on an adult male.  That is

3    what was stricken from the plea agreement because my client

4    does not agree with that statement.

5         THE COURT:  One of the known images from this series

6    -- the burden here is not beyond a reasonable doubt.  The

7    burden is simple persuasion.

8         Does the Government want to proceed with the proof of

9    that report or can Probation tell me the basis for that report,

10   that last sentence?

11        PROBATION OFFICER BECKNER:  Your Honor, all of the

12   information contained in the offense conduct section was taken

13   from investigative materials and corroborated in contact with

14   the case agent --

15        THE COURT:  Okay.

16        PROBATION OFFICER BECKNER:  -- in this matter.

17        MS. KOPPE:  And, your Honor, that image has been

18   identified by the National Center for Missing and Exploited

19   Children as a known image from that series.  At the time of the

20   plea agreement, the Defendant did not wish to admit that.  It

21   wasn't an element of the crime so we allowed him not to admit

22   to it.  However, it is -- it has, in fact, been shown by the

23   NCMEC report to be an identified image.

24        THE COURT:  Now, the statement is precisely:  "One of

25   the known images of this series which was sent by Hoffman to

1   Kay's friend, who was then a minor, is a still image taken from

2   a video of prepubescent Kay performing oral sex on an adult

3   male."  So all the facts there are proven and shown, number

4   one, that this is a still image from the series; that Hoffman

5   sent it to Kay's friend, who was then a minor; and number

6   three, it contained the view that is set forth here?

7            **MS. KOPPE:**  Your Honor, the Defendant admitted to

8   most of that.  He admitted that he sent the child pornography.

9   He admitted what the pornography depicted.  He admitted that he

10  sent it to Kay's friend, who was then a minor.  The only thing

11  the Defendant refused to admit, at the time of the plea, was

12  that the person depicted in that image was in fact Kay.  That

13  image has been identified by the National Center for Missing

14  and Exploited Children as a known image from the series in

15  which Kay was a victim.  We do have the agent on the case in

16  the courtroom.  We also have the NCMEC report.

17           **THE COURT:**  Okay.  And is it -- that contained in the

18  NCMEC report?

19           **MS. KOPPE:**  Your Honor, the NCMEC report contains the

20  file names of all of the images that were identified.  The

21  agent then looked at the file names and looked at the images,

22  so --

23           **THE COURT:**  And does it contain any statement to the

24  effect that this is a still image from that series?

25           **MS. KOPPE:**  Your Honor, that -- the file name is in

 1   there --

 2            THE COURT:  Uh-huh.

 3            MS. KOPPE:  -- so it doesn't specifically --

 4            THE COURT:  Okay.

 5            MS. KOPPE:  -- state exactly the way that your Honor

 6   put it --

 7            THE COURT:  And does it --

 8            MS. KOPPE:  -- but yes.

 9            THE COURT:  And does it conclude that Kay is depicted

10   there?

11            MS. KOPPE:  Yes, it does.

12            THE COURT:  Okay.  And that's hearsay, of course, but

13   I'm entitled to take hearsay at this stage, am I not?

14            MS. KOPPE:  Yes.

15            MR. LEVENTHAL:  Yes, your Honor.  And I guess your

16   Honor's questions, my client has the issue with the oral sex

17   part of that factual statement, not whether it was Kay or

18   whether it was a still image.  It's the oral sex part that my

19   client is having an issue with, whether or not there was actual

20   performance of that.

21            THE COURT:  But it depicts it, whether or not there's

22   actual performance or not, right?

23            MS. KOPPE:  Yes, your Honor, it does.

24            THE COURT:  Okay.  I'm going to overrule your

25   objection, and I have sufficient basis and there's sufficient

1   basis for the statement in the report.  Therefore, I'm going to

2   make a finding that it's properly included.

3           Any other objections?

4           **MR. LEVENTHAL:**  No, your Honor.

5           **THE COURT:**  And, Mr. Hoffman, you've read the report,

6   sir, and discussed it with your attorney?

7           **THE DEFENDANT:**  Yes, your Honor.

8           **THE COURT:**  And other than the objection your

9   attorney just stated, did you have further objections to the

10  report?

11          **THE DEFENDANT:**  Yes, your Honor.

12          **THE COURT:**  Uh-huh.  Please, which paragraphs?

13          **THE DEFENDANT:**  On page 12, item 62, your Honor.

14          **THE COURT:**  Item 62.  This is a conviction for

15  trespass, injury to property, misdemeanor.

16          **THE DEFENDANT:**  Yes, your Honor.

17          **THE COURT:**  A 24-month term of probation, two points

18  received; and this was for a conviction while represented by

19  counsel, arrested by officers on charge of disorderly conduct,

20  soliciting lewd act.  It was then formally charged with

21  indecent exposure, annoying a child under 18, trespass.

22  Injured property; Counts One and Two were ultimately dismissed

23  pursuant to negotiations.

24          The conviction was for trespass, injure to property,

25  misdemeanor.  That was the conviction for which you received

1    two points, and what is the objection?  Counsel, maybe I should

2    ask counsel instead of --

3          **MR. LEVENTHAL:**  My client's objection to this was

4    that it was over ten years, but my client was looking at the

5    age or that -- at 1997 when this occurred, and I explained to

6    him that it actually was the '99 date where you start the --

7          **THE COURT:**  Probation reinstated.

8          **MR. LEVENTHAL:**  -- timing on it.

9          **THE COURT:**  Okay.

10         **PROBATION OFFICER BECKNER:**  Your Honor, just for a

11   point of clarification, in Count One and Count Two -- or Count

12   Four, rather, that the Defendant has pleaded guilty to in this

13   case, the conduct charged again as early as June 26th of 2007,

14   so that, for the purposes of criminal history calculation,

15   would be our starting point, moving back from that date.

16         **THE COURT:**  So that's within the time period allowed

17   for you to include a two point?

18         **PROBATION OFFICER BECKNER:**  Yes, sir.

19         **THE COURT:**  Okay.  All right.  I do have to overrule

20   that objection, Mr. Hoffman, on the basis that it is legitimate

21   to count that in your criminal history category score.

22         **MR. LEVENTHAL:**  I believe that's the only objection

23   that my client has at this time.  Thank you.

24         **THE COURT:**  Okay.  Let's hear the report then,

25   please.

1       **PROBATION OFFICER BECKNER:**  Your Honor, the

2   Defendant, as the Court has noted, pleaded guilty to Count One,

3   transporting child pornography, which carries with it a minimum

4   of five years' imprisonment to a maximum term of 20 years'

5   imprisonment.  And to Count Four, stalking, which carries a

6   maximum five-year term of imprisonment.

7       The Probation Office calculated the offense level

8   computations as follows.

9       As to Count One, transporting child pornography, the

10  base offense level was determined to be 22 pursuant to United

11  States Sentencing Guideline Chapter 2G2.2A2.

12      Two additional levels were added as the images

13  involved a prepubescent minor, one who had not attained the age

14  of 12, pursuant to United States Sentencing Guideline Section

15  2G2.2B1.

16      An additional five levels were added as the Defendant

17  distributed images of child pornography to a minor pursuant to

18  United States Sentencing Guideline Section 2G2.2B3C.

19      As some of the images involved portrayed conduct that

20  would be defined as sadistic or masochistic, a four-level

21  increase is applied pursuant to United States Sentencing

22  Guideline Section 2G2.2B4.

23      As the instant offense involved a computer or other

24  interactive device, an additional two levels is added pursuant

25  to United States Sentencing Guideline Section 2G2.2B2; and as

1    more than 600 images of child pornography were involved in the

2    instant offense, an additional five levels were added pursuant

3    to United States Sentencing Guideline Section 2G2.2B7D.

4              This resulted in an adjusted offense level of 40 as

5    to Count One.  As to Count Four, the stalking count, the base

6    offensal (phonetic) of -- the base offense level, rather, was

7    determined to be 18 pursuant to United States Sentencing

8    Guideline Section 2A6.2A.

9              An additional two levels were added as the Defendant

10   committed two or more separate instances of stalking the

11   victim; and he engaged in a pattern of activity involving

12   stalking, threatening, harassing or insulting the same victim,

13   pursuant to United States Sentencing Guideline Section

14   2A6.2B1D..

15             This resulted in an adjusted offense level of 20 as

16   to Count Four.  A multiple-count adjustment was completed as to

17   Counts One and Count Four pursuant to United States Sentencing

18   Guideline Chapter 3D1.4.  And the adjusted offense level for

19   group one, which is Count One, was 40.  This was assigned one

20   unit.  The adjusted offense level for group two, which is Count

21   Four, was 20.  This was assigned no units.  This resulted in no

22   increase to the greater offense level of 40, resulting in a

23   combined adjusted offense level of 40.

24             Three levels were reduced from that, for an

25   affirmative acceptance of responsibility resulting in a total

1   offense level for both counts of 37.

2          The Defendant had eight countable criminal history

3   points, which placed him in a criminal history category Roman

4   Numeral IV.  His guideline sentencing range for Count One was

5   240 months --

6          **THE COURT:**  That's the statutory maximum.

7          **MS. KOPPE:**  Yes, your Honor.  That was reduced from

8   the original range, which was between 292 to 365 months.

9          As to Count Four, it is 60 months which again, as

10  your Honor pointed out, is the statutory maximum.  Probation --

11         **THE COURT:**  The total, even if that's consecutive, is

12  still less than the guideline as not capped.

13         **MS. KOPPE:**  Your Honor, I can give you that citation.

14  I'm sorry.  That -- because the sentence imposed on the count

15  carrying the highest statutory maximum, Count One, which is the

16  20 years, is less than the total punishment contemplated by the

17  guideline range, the sentence imposed on one or more of the

18  other counts shall run consecutively but only to the extent

19  necessary to produce a combined sentence equal to the total

20  punishment.  And that is pursuant to the United States

21  Sentencing Guidelines Section 5G1.2D.

22         As to this Defendant, probation is not authorized

23  under the sentencing guidelines.  Supervised release is

24  authorized for a term of up to lifetime as to Count One and

25  between two to three years as to Count Four.

13

1          The applicable guideline fine range is between 20,000

2     to $200,000; and there is an amount of restitution owed in this

3     case.  As of the writing of the presentence report, that amount

4     was calculated to be $152,252.91.  And there is a $200

5     mandatory penalty assessment in this matter.

6          **THE COURT:**  Thank you.  Other than the restitution

7     amount, which we'll address in a moment, is there objection to

8     the guideline determination as suggested by Probation?

9          **MS. KOPPE:**  No, your Honor.

10          **MR. LEVENTHAL:**  No, your Honor.

11          **THE COURT:**  That will be the finding, then, of the

12     Court, 37 with a criminal history category four, with the

13     guideline provisions being 240 months for Count One, capped at

14     240 months and capped at 60 months for Count Four.

15          Is there objection to the restitution amount

16     suggested in the report?

17          **MS. KOPPE:**  Not from the United States, your Honor.

18          **THE COURT:**  And no revision suggested by the United

19     States?

20          **MS. KOPPE:**  That's correct.

21          **MR. LEVENTHAL:**  Judge, we just -- I mean, for

22     152,000, I'm not sure where Probation comes up with 152,252.91.

23          **THE COURT:**  Uh-huh.  Let's ask the Government to

24     summarize that, then.  The Court has received in -- has

25     received, subject to the opportunity to object, of course, a

 1    victim impact statement, which includes a statement by Kay

 2    herself as well as her attorney.  It includes a psychological

 3    status report summary detailing psychological deleterious

 4    effect, not only by being the victim in the case series, but

 5    also by the conduct of Mr. Hoffman.  It includes statements of

 6    background of psychologist, hours spent on the project and

 7    attorneys' fee hours.

 8            Is there objection to receipt of the victim impact

 9    statement?

10            **MR. LEVENTHAL:**  Not at this time, your Honor.

11            **THE COURT:**  Okay.  What else is the Government asking

12    me to consider, and then summarize, please, the -- also, of

13    course, an updated victim impact statement from Mr. Bogden's

14    (phonetic) office with final calculation of fees and statement

15    of the victim.  What else is the Government asking me to

16    consider in summarizing please, then, as well as the

17    restitution amount?

18            **MS. KOPPE:**  As regards to the restitution, your

19    Honor, my understanding is that Probation received the same

20    packet that the Court received and that my office received; and

21    that this is simply the sum of all of the items in the packet.

22            **THE COURT:**  So this restitution goes to Kay and

23    counsel for Kay for payment of bills, psychologist bills, Kay's

24    legal fees and any restitution to Kay herself?

25            **MS. KOPPE:**  That's correct, everything that's set out

1    in the packet.

2              **THE COURT:**  And so the restitution judgment, the

3    proceeds, of course goes to Kay?

4              **MS. KOPPE:**  Yes, they do, your Honor.

5              **THE COURT:**  Uh-huh.

6              **MS. KOPPE:**  And to bills; but, yes.

7              **THE COURT:**  Okay.  Does counsel want to object to

8    either the receipt?  Well, you've already waived objection to

9    the receipt of the evidence, but to the determination of any of

10   the elements of restitution?

11             **MR. LEVENTHAL:**  Only in so, Judge, that 152,000, I --

12   the question, I guess, I would have is that joint and several

13   will, obviously -- is this the amount of restitution that's

14   across the board for anybody who's ever found to be in

15   possession of these items?

16             **THE COURT:**  It could well be.  I mean, that would be

17   for another court to determine.  But in other words, what I'm

18   saying is, his liability is joint and several.  So even if the

19   restitution judgment were awarded against other defendants and

20   they couldn't come up with the money, he's still jointly and

21   severally liable for the total amount.

22             Obviously if somebody else paid $30,000 first before

23   he got a chance to, he can't be held to pay the $30,000 twice.

24   So it's simply joint and several with any other judgment,

25   criminal judgment debtors.

1    **MR. LEVENTHAL:** Well, and it's my understanding that

2 there has been some payment. Your Honor, I did receive a copy

3 of a breakdown that some -- apparently some defendants are

4 paying, and I don't know how much that is.

5    **THE COURT:** Uh-huh.

6    **MR. LEVENTHAL:** I don't know if the Court's aware but

7 some defendants are paying, and so I would ask that that amount

8 then be reduced as a restitution order to my client.

9    **THE COURT:** What I think I would intend to do is

10 enter the total amount of the restitution but you've got the

11 right to ask and to receive from the Government any accounting

12 of monies heretofore paid towards the end ultimately of a

13 satisfaction of judgment.

14    Any further objection? Okay.

15    **MR. LEVENTHAL:** No, your Honor.

16    I would also note -- just going back on the guideline

17 calculation, your Honor, the plea agreement allowed defense to

18 argue on the 600 or more images. That would be under Paragraph

19 39.

20    **THE COURT:** Right. Six hundred or more is a

21 rationale for an additional five level. Is that what is?

22    **PROBATION OFFICER BECKNER:** Yes, your Honor.

23    **THE COURT:** Uh-huh.

24    **MR. LEVENTHAL:** Yes, your Honor. And I did go over

25 to -- with the Government and we counted the images. We did

1    get up to 600 so I would withdraw my --

2         **THE COURT:**  Okay.

3         **MR. LEVENTHAL:**  -- argument there as in addition to

4    Paragraph 37, your Honor, under 2G2.2B4, what those portrayed.

5         **THE COURT:**  Okay.

6         **MR. LEVENTHAL:**  I would also withdraw my argument as

7    well there.

8         **THE COURT:**  All right.  If there's no further

9    objection, I'll make that my finding, then.  I think I just did

10   already.  There was 37, a criminal history category four; and

11   with those guidelines applicable.

12        Let's pass now, please, to the 3553 factors.  What in

13   addition to the guideline, guideline determination I ought to

14   consider.  I am, of course, considering all of the victim

15   statements that came in.

16        Let me ask first for Government's comment and

17   recommendation and then defense counsel, any statement that Mr.

18   Hoffman wishes to make.  You don't have to, sir, but if you

19   wish to make a statement, and then final word to -- short of

20   any need for a reply to counsel, please.

21        **MS. KOPPE:**  Your Honor, I would note before I begin

22   my argument, I do have the parents of the victim in this case

23   who are going to make a victim impact statement to this Court

24   as well.  Before they do, however, because what they are going

25   to say is probably -- well, it's definitely much more important

 1 | than what I'm going to say, so I will let them finish, and

 2 | before --

 3 | **THE COURT:**  Just a simple victim statement on behalf

 4 | of Kay.

 5 | **MS. KOPPE:**  That's correct.  Her parents are here to

 6 | make those statements.

 7 | **THE COURT:**  And not under oath.  It's just a victim

 8 | statement.

 9 | **MS. KOPPE:**  That's correct.

10 | **THE COURT:**  Uh-huh.

11 | **MS. KOPPE:**  It's the victim impact statement.

12 | **THE COURT:**  Uh-huh.

13 | **MS. KOPPE:**  We have submitted the final order of

14 | forfeiture, and we would ask your Honor to sign it.  A copy of

15 | that has been given to the defense.

16 | **THE COURT:**  That's a forfeiture for the restitution

17 | judgment?

18 | **MS. KOPPE:**  No.  That's a forfeiture --

19 | **THE COURT:**  Computers.

20 | **MS. KOPPE:**  -- for the property that was used in this

21 | case --

22 | **THE COURT:**  Right.

23 | **MS. KOPPE:**  -- containing the contraband.

24 | Your Honor, the evidence in this case was very clear.

25 | As the Court knows, and I will go over the facts of this case

1  very quickly.  But the Defendant specifically sought out a

2  known victim of a child pornography series.  He found her on

3  MySpace.  He told her that he had been looking for her for five

4  years.  He was proud of the fact that he had found her.  He

5  then began to talk to her, and as she stated -- as you can see

6  in the packet submitted to the Court, as she stated to her

7  psychologist, his looking for her for nearly five years fueled

8  her fear of having been watched.

9          As this Court knows, once child pornography is on the

10  Internet, there's no getting it back.  These children who are

11  victims spend the rest of their lives not knowing who has seen

12  these images, who has seen the worst moments of their lives.

13  These are nothing less than pictures of a crime scene.  These

14  are the worst moments of a child's life recorded forever and

15  sent out to people for their own gratification.

16          So this fueled her fears of exactly what she was

17  afraid would happen, that someone could find her based on these

18  images.  He belittled her anger at the person who made this

19  child pornography.  He called her a coward.  He called her a

20  willing participant.  Keep in mind that she was nine and ten

21  years old.  She was a small child when this crime occurred.

22          He expressed interest in more pictures.  He wanted to

23  engage in these sort of acts with her.  This is someone who's

24  trying to recover from a huge, horrible trauma.  And this

25  Defendant, on more than one occasion, brought it back --

1    brought it back in a way that she couldn't forget it.  He even

2    sent these images to a friend of hers and said:  "Hey, you

3    know, she's a porn star; hah, hah, hah."

4             Even after the Defendant has been in custody -- and

5    let me just go back for a moment.  He was then found in

6    possession of over 1,000 -- we've said over 600 because that's

7    the highest enhancement we have.  He was found in possession of

8    over 1,000 images of child pornography.

9             Even after he was arrested and indicted on this case

10   and he's been in custody during this time, the Defendant has

11   still been writing numerous things in his cell.  He was found

12   in possession of child erotica in his cell.  He was found

13   writing letters to someone he knows back in New York, talking

14   about this person's granddaughter; and I'll refer to her by her

15   initial as well because she's a minor.  She was under the age

16   of ten at the time.

17            He sent letters to her.  He sent poems to her.  He

18   told the grandfather to "please tell C. that I love her beyond

19   measure.  As a token of trust, I'm asking you to please send me

20   C.'s photograph.  I have an " un -- and this is his word --

21   "unexplainable connection with her," meaning C, "that you may

22   never understand."  He also talks about how he shouldn't talk

23   about whether he's sexually attracted to C. in a letter because

24   it's a touchy issue, in his words.

25            The Defendant also wrote letters to an adult woman in

1    New York named Lilly, talking about how he wanted to see her

2    again and he knew she loved him and he loved her.  Lilly has

3    been contacted and, in fact, the Defendant's attentions are

4    unwelcome.  She does not want to hear from him.  She's not

5    interested in him but that has not deferred -- deterred the

6    Defendant.

7         He also did the same sort of thing to a guard in

8    North Las Vegas.  And this was a guard who looks very young.

9    This is a Defendant who has shown that he will stop at nothing

10   to find what he wants.  What he want -- what he's interested in

11   is sex with minors.  He will -- he doesn't care if he

12   traumatizes someone who's already been traumatized.  He doesn't

13   care if he hurts someone who's already been hurt.

14        The statutory maximum in this case, your Honor, is

15   below the guideline range and the Defendant pled and admitted

16   to consecutive -- agreed to a consecutive sentence.

17        We would ask this Court to follow the recommendation

18   of Probation, including the sentence of incarceration as well

19   as the lifetime supervised release with the conditions

20   recommended by Probation.

21        And with that, your Honor, we would ask for this

22   Court to accept the in-person victim impact statement of the

23   victim's parents.

24        **THE COURT:**  Is there an objection?

25        **MR. LEVENTHAL:**  No, your Honor.

1          **THE COURT:**  They may come forward, please.

2          Thank you, sir.  You have to come forward to the

3    microphone, please, and state your full name.  And please in

4    all instances, address your comments to me, please.

5          **MR. PEALE:**  My name is Chris Peale.

6          **THE CLERK:**  Can you spell your last name?

7          **MR. PEALE:**  P as in Paul-E-A-L-E.

8          **THE COURT:**  Thank you, sir.

9          **MR. PEALE:**  Hearing all that, Judge, I'm a little

10   annoyed now but -- so I'm sorry.

11         Honorable Judge Jones, officers of the Court and

12   individuals in this courtroom, my family has endured four and a

13   half years to date of a living hell because of the selfish,

14   perverted actions of a very sick and evil individual.

15         My daughter lived with this pain and trauma for six

16   years, unable to tell anyone because of the fear she had for

17   her biological father.

18         We thought we were dealing with one bad apple, but as

19   time goes by, we are finding there are more and more of these

20   sick individuals that are viewing and sickly satisfying their

21   awful desires like this individual.

22         We used to receive reminders in the mail and via

23   email, letting us know about the individuals that are being

24   prosecuted because they have our daughter's images, child

25   pornographic images, on their computer.  We received enough

1   notices to overflow a 55-gallon drum.  Before we had it

2   stopped, it's -- excuse me -- overflow a 55-gallon drum before

3   we had it stopped, stopped receiving them.

4           It's mind-boggling to see that there are so many of

5   these perverted individuals out there.  It sickens me and hurts

6   me to the core knowing that some pervert is viewing my little

7   daughter as she was made to dress up like a hooker and is

8   molested and raped.  I'm so sad that I couldn't stop these

9   awful things from happening; and with each letter, email and

10  phone call from the Department of Justice, I am reminded how I

11  could not protect her; how her innocence has been torn away;

12  and now she is continually reminded that her pictures will be

13  there forever.

14          You are one of those sick individual -- perverted

15  individuals, but you have gone further to inflict harm and

16  pain, both mentally and physically, to my daughter and to my

17  family.  You sought her out on MySpace.  You could talk -- you

18  contacted her friends and then her.  You stalked her like a

19  pervert, disturbed and sick individual like we see in the news

20  and on TV all the time.

21          You have stepped -- no, you have jumped, over the

22  line to hurt my daughter and cause her a great deal of pain and

23  fear.  You have brought more shame to her.  My daughter carries

24  this shame, Judge, like a scarlet letter.  She is beginning to

25  move forward but there are many moments where this tragedy

1   raises its ugly head and paralyzes her or inhibits her ability

2   to function at school and as a normal young adult.

3           The constant reminder that her pictures are out there

4   brings forward the guilt and shame which caused nightmares and

5   makes her want to isolate herself from others.  Each time she

6   hears about these cases, she looks so strong on the outside;

7   but when you sit and talk with her, you see the pain.  You hear

8   the struggles and you feel the sadness and the emotional drain

9   that it causes.

10          We are asking for justice, sir, with each of these

11  cases that are brought forward and with these perverts.  We

12  especially wanted to be here for this case because you stalked

13  our daughter.  You brought fear and shame to a person who only

14  deserves love and compassion, not sick perversion, sir.  We are

15  hoping and praying that he can understand how wrong he was and

16  is and how hurtful his actions are for each victim in the

17  pictures and videos on his computers.  Sir, please help him

18  understand the significance of what he has done and how each

19  child is a victim because each child has done nothing wrong.

20          My daughter's the strongest person that I know, and I

21  am so proud of her.  Our daughter is still plagued by the awful

22  things that her biological father did and now by the horrible

23  fallout from these pictures and videos.  She suffers deeply

24  each day so much that it has changed the wonderful life that my

25  wife have planned for her.  I pray that she can heal from the

1  trauma that her biological father did to her and from the

2  constant reminders that each of these sick individuals brings

3  with each download.

4         Actions sometimes have consequences; and when actions

5  like this happen, the consequences should be powerful and

6  lasting, whether through prison and/or financial judgment.

7         Give my daughter her justice, sir, so that she may

8  completely heal some day.  Thank you.

9         **THE COURT:**  Thank you, sir.

10        Thank you, ma'am.  If you'll come to the microphone,

11 please, and state your full name.

12        **MS. PEALE:**  Gayin Via Peale (phonetic).

13        **THE COURT:**  Thank you, ma'am.  Go ahead.

14        **MS. PEALE:**  Your Honor, ladies and gentlemen of the

15 Court, my daughter was raped and sexually abused in so many

16 horrible ways as a child by her biological father.  He also

17 videotaped her abuse as he ravaged, raped and pillaged her ten-

18 year-old body.  This sick man shared these repulsive pictures

19 and videos of her on the internet for perverts like himself to

20 see.

21        The sexual abuse she suffered at the hands of her

22 father without a doubt started her agonizing pain but this is

23 certainly not where her pain ends or mine.  Yes, the memories

24 and trauma of her abuse still haunt her and our family but now

25 there is a new abuser.

1          The new abusers are the sick individuals who download

2     her picture and enjoy watching her being sexually assaulted as

3     a child.  This sickens me.  Every time these pictures of my

4     daughter are looked at and passed around, the depraved people

5     doing this are furthering my daughter's pain, shame and abuse.

6     They pass it around like some dirty magazine when, in fact,

7     it's the footage of an abused, helpless child.

8          There are days when the pain from this is unbearable

9     for me.  These vile people increase her pain and mine.  These

10    are certainly not the hopes and dreams I had for my little

11    girl, this life of pain and shame.  It is so terribly sad and

12    painful to watch her struggle with this.  These awful people

13    are raping my little girl all over again by cruelly watching

14    and enjoying her pain and deriving some sick sexual pleasure

15    out of it.

16         The knowledge of this sends me into mourning,

17    mourning the loss of my child's dignity and well-being and

18    mourning the fact that she suffers such deep pain.  I have

19    watched her suffer so much already, and it kills me.  I have to

20    watch her suffer still at the hands of the people wanting to

21    view the nightmare of her abuse as her innocence was being

22    robbed.  She was a child and helpless and made to do disgusting

23    things that she did not want to do.  Approval from her

24    biological father came only when she carried out his every

25    dirty command.

1          He posed her, insisted she say certain things and

2  made her force a smile as he was brutalizing her.  When I think

3  of my daughter being groomed and posed and made to feel so

4  dirty in these perverted and depraved pictures and videos, it

5  hurts me to the core.  I wonder how there can be people that

6  can actually enjoy watching my little girl being raped and

7  sexually abused.  I wish they knew how much it hurts and how

8  much they are worsening our pain.  Knowing that these

9  disturbing videos of her and her abuser are being viewed and

10  are continuing to foster this corrupt sexual behavior bring a

11  lot of pain, stress and shame to her at the cost of her

12  dignity, modesty and innocence.  People viewing these images of

13  her are furthering the terrible addiction of child pornography

14  for themselves and the others that they pass it on to.

15          Those images are not who my daughter is or ever

16  wanted to be but because she was robbed of her innocence and

17  forced to do ugly things and it was videotaped, she is

18  continually being viewed as someone she is not.  She is, in

19  fact, the opposite.  These offenders are still victimizing and

20  torturing her, bringing pain and shame and every time they look

21  at those images of her.  As her mother, I share in this

22  heartbreaking pain and the sadness this brings to me is

23  unending.  These viewers need to understand that there is a

24  helpless little girl on the other side of these videos whose

25  innocence and childhood were shattered, and viewing these

1    things makes them a part of the abuse and unimaginable pain my

2    daughter and our family have to face all the time.

3          Making, viewing and downloading child pornography is

4    wrong and a crime.  I hope everyone can know that child

5    pornography is not a victimless crime by the statement I've

6    shared with you about my daughter and our family's constant

7    pain and struggle.  My daughter's life is still very hard and

8    she still struggles so much due to her sexual abuse.  I also

9    struggle.  It is so devastating to know your child's life has

10   been brutalized; and to make matters worse, it has been

11   released to the public for any deviant at the press of a button

12   to view and continue the sickening process of enjoying my

13   daughter's pain.

14         This still has a major grip on her life as it also

15   does on mine.  She is 20 years old and has never had a

16   boyfriend due to trust issues and fear of relationships.  If I

17   could quote my daughter in something she often says in

18   describing how she feels about these people downloading her

19   images, if you can imagine having a bad picture of yourself

20   taken, one that you're really embarrassed about.  Now picture

21   yourself naked, being raped and abused and hurt at the age of

22   nine or ten.  Those pictures of abuse at the hands of someone

23   else are now being viewed for anyone to see at the touch of a

24   button or on a computer.  These viewers are even interacting

25   with your images of abuse.  It feels like a slow drip of acid

1    on your soul, never ending, always robbing you of your

2    innocence, normalcy and joy.

3            Mr. Hoffman, you stalked my daughter.  You viewed

4    images of my daughter.  You have been so obsessed with my

5    daughter's images that you'd been searching for her.  You even

6    sent these pictures of her abuse to a friend of hers.  You

7    hacked your way into my daughter's MySpace to hound her, to

8    bully her, telling her you had been searching for her for

9    years.  In your words on MySpace, you called my daughter a

10   coward for telling the truth.  You tried to demean her in a

11   very cruel way, telling her how wrong she was.  You said her

12   dad had done nothing wrong to her and asked why she was doing

13   this to him.  Your sick words were very disturbing and very

14   hurtful to all of us.  I wish she'd never seen those horrible

15   words.  They were cruel.  Because of your words and actions,

16   you have brought more pain and suffering to my daughter.  You

17   are the reason my daughter has to keep reliving this horror of

18   her abuse because you keep it going.  You keep viewing it, and

19   passing it on to others.  She didn't have a choice.  You did.

20   And your choice is traumatizing my daughter and is also keeping

21   you on a very destructive downward cycle.

22           What you did is wrong, hurtful and a crime, a crime

23   that thankfully has consequences.  Child pornography and those

24   viewing it always hurt the child or the children who are

25   involved.  It is destructive in every way to the viewer as

1   well.  I wish I could take away my daughter's pain and give her

2   back what has been stolen from her.  I could not, but I am

3   asking for accountability from the individuals who have hurt

4   her and are continuing to hurt her.

5          For my daughter and countless others who are victims

6   of such a terrible and painful crime, please grant us justice

7   today.

8          Thank you.

9          **THE COURT:**  Thank you, ma'am.

10          I appreciate the victim statements.  The statute

11  requires that I take them, and I assure you that I will take

12  them into consideration.

13          All right.  Anything further from the Government?

14          **MS. KOPPE:**  No, your Honor.  We would just ask that

15  based on everything this Court has heard today, the crime

16  itself, the relevant conduct regarding the fact that the

17  Defendant is still trying to send letters to minor children and

18  importantly the impact on this victim's family, we ask this

19  Court to follow the recommendation of probation in total.

20          **THE COURT:**  Thank you.

21          All right.  Please, counsel, response; and then Mr.

22  Hoffman, if he wishes to make a mistake -- a statement, he does

23  not -- he is not required to make a statement.  He may rely

24  upon counsel's statement or both.

25          **MR. LEVENTHAL:**  Judge, my client would like to make a

1    brief statement.

2              **THE COURT:**  Yes, please.  Mr. Hoffman?

3              **MR. LEVENTHAL:**  Speak here?

4              **THE COURT:**  Yes, please.  If you'd just stand there,

5    sir.

6              **THE DEFENDANT:**  Your Honor, I know when to raise the

7    white flag, sir; and I'm basically, I'd just like to apologize

8    to the family.

9              **THE COURT:**  Thank you, sir.  All right.  Counsel, on

10   the 3553 factors, please.

11             **MR. LEVENTHAL:**  You know, Judge, I would just caution

12   the Court on a reasonable, what's a reasonable sentence, which

13   this Court knows that that's what must follow under 3553(a)

14   factors.

15             It's been noted many times before your Honor that my

16   client is sick and, you know, maybe there's some truth to that.

17   My client needs help.  He understands that.  He's here, he's

18   pleading guilty to this; and he's hoping to get into a facility

19   that could help him become part of society when he gets out in

20   20 years.

21             He does have goals when he gets out, your Honor, as

22   the Court noted presentence report; he's got some goals on what

23   he wants to do for a living.  But I would caution this Court to

24   temper a sentence that's reasonable.  It's easy to -- it's easy

25   to hate people like Mr. Hoffman.  It's easy to hate him and

32

1 think that we can just throw him away.  But, you know, I think

2 Mr. Hoffman said it when he said he's raising the white flag.

3 I think what he means by that is he realizes now more than ever

4 the impact that this has had on the victim and the victim's

5 family.

6          As I sat here and I looked at him and he was crying,

7 there is some emotion there, your Honor, so I would ask that

8 you take that in consideration when the Court sentences him.

9          Thank you.

10          **THE COURT:**  Thank you.

11          Anything further?

12      **(No audible response)**

13          All right, let me address the 3553 factors.  I really

14 think that the maximum statutory penalty here is appropriate,

15 Mr. Hoffman.  I'm required by the statute to consider the

16 nature of the offense.  I know that these crimes, like all

17 other crimes delineated in our Title 18, are human failings --

18 human faults; and, therefore, sentencing is a very human thing.

19 I'm supposed to take into account the particular offense, your

20 particular circumstances, your criminal history and of course

21 the protection of the public.  That's what the statute requires

22 me to consider.

23          I appreciate your statement that you're raising the

24 white flag but to be honest with you, I take it in -- not in

25 any kind of guilty or sorrowful sense.  I take it because I

1    really don't accept any proposition that you've realized the

2    wrongfulness and, therefore, motivation to stop engaging in

3    this particular conduct.  Honestly, as I sit here, I don't

4    think you have that realization.

5           But that's neither here nor there.  I am required to

6    protect the public; and because I do think that you really do

7    have a serious problem, just like other problems.  I'm not

8    condemning you any more than I might condemn a defendant in

9    another type of a crime, someone who's addicted to drugs or

10   addicted to sex or addicted to eating too much.  All of us

11   share to some extent or another in those various addictions so

12   I'm not pointing at you a finger that makes you different or

13   the object of hate or spite by any of us because we are all

14   guilty of those various addictive type behaviors.  But I do

15   believe, and I honestly conclude and find that you are firmly

16   implanted in that addiction.  That is your predilection.  That

17   is your tendency, your desire; and a short sentence or anything

18   shorter than the statutory maximum, just simply would not be

19   sufficient to protect the public.

20          I have very strong doubts whether you will have any

21   ability to overcome that propensity during the 20, 25 years

22   that the statutory maximum provides or potentially even during

23   the lifetime tenure of supervised release to follow.  I express

24   my sympathy for that ingrained habit but I have to recognize it

25   in setting an appropriate and reasonable sentence.

1          Number one factor in my mind is protecting the public

2   because of your own particular circumstances.  I don't think I

3   can afford to have what otherwise would be a merciful stance

4   because I just don't think I'm capable of protecting the public

5   other than by setting the maximum sentence.  I'm required to

6   look at your own particular circumstances and I appreciate

7   that.

8          You don't have a criminal record of drug violations

9   or shooting people or holding up banks, but you do have the

10  background and circumstance and learned behavior that you have

11  and that's what we deal with; and statutory maximum is all

12  really that would satisfy addressing the minimum sentence

13  necessary to help you with that problem.

14         The third factor is to an appropriate sentence taking

15  into account your criminal history and that's evidence here.  I

16  mean, you're not -- you don't have great big long lists of

17  felony convictions, but you do have a strong history and

18  background of not only downloading and viewing child

19  pornography but also contacting children and making attempts

20  against children, including the stalking conduct alleged here.

21         So those factors I fully have in mind, and I think

22  the finding of the maximum statutory penalty is sufficient on

23  the record to express to the appellate court all of the reasons

24  why under the 3553 factors nothing less than the statutory

25  maximum does it in this case.  I have great sympathy for people

1  who simply download, even download child pornography.  I mean,

2  the greater sympathy, of course, is for the victims but I have

3  sympathy because it's a human addiction and I appreciate that.

4          The problem in your particular case and why minimum,

5  statutory minimums, would not suffice is because you act on it.

6  You pursue the children, and that the Court has to take into

7  serious account in order to protect the public from your

8  learned behavior.

9          So with that explanation to the appellate court, I do

10  think under the 3553 factors, it has to be nothing less, as

11  satisfactory, than the maximum statutory penalty.

12          If you would, please, stand with your attorney, sir.

13  I am prepared to sentence you, and I do hereby commit you to

14  the Bureau of Prisons for a term on Count One of 240 months.

15  Right?  That's 20 years.  That's the 20-year maximum.  And on

16  Count Four, a term of 60 months to be served consecutively, not

17  concurrently, consecutively, with a supervised release term of

18  lifetime to follow.

19          That's lifetime.  Let's see.  With respect to Count

20  One, it is five to life.  That's Count Four.  I'm sorry.  And

21  Count One is five years to life.  So a lifetime supervised

22  release term concurrent, of course, on both counts.  That's the

23  way we do it.

24          In addition, restitution in the amount of -- I'll

25  read the exact amount as set forth in the presentence report --

1   is $152,252.91.  That will be part of the judgment.

2            A mandatory penalty assessment of $100 per count is

3   required by statute and due immediately.  That's a total of

4   $200.

5            Due to Defendant's financial situation, any fine is

6   being waived.

7            During the term of supervised release, sir, you are

8   subject to the conditions -- standard conditions of supervision

9   recommended by the Sentencing Commission -- and we'll give you

10  a copy of those in just a moment -- and the following mandatory

11  conditions required by statute, there are four of them.

12           First, you shall not commit another federal, state or

13  local crime during the term of supervision.

14           Second, you shall not possess illegal controlled

15  substances.  Revocation of supervision is mandatory for

16  possession of illegal controlled substances.  That means any

17  time during this lifetime tenure of supervised release, if you

18  possess illegal controlled substances, we can send you back to

19  jail.

20           Third, you shall submit to mandatory drug testing as

21  directed by the probation officer in this regard within 15

22  days, the first test, and no more, please, than 104 tests per

23  year.  Revocation, again, is mandatory for refusal to comply.

24           Number four, you shall submit DNA collection and

25  analysis as directed by the probation officer.

1           In addition, the following special conditions are

2    imposed during that supervised release term:

3           Number one, possession of weapons.  You shall not

4    possess, have under your control or have access to any firearm,

5    explosive device or other dangerous weapon as defined by

6    federal, state or local law.

7           Second, warrantless search.  You shall submit to the

8    search of your person, property or automobile under your

9    control by the probation officer or any other authorized person

10   under the immediate and personal supervision of the probation

11   officer and without a search warrant to ensure compliance with

12   all conditions of release.

13          Third, mental health treatment.  You shall

14   participate in and successfully complete a mental health

15   treatment program which may include testing, evaluation,

16   medication management, out-patient counseling or residential

17   placement as approved and directed by the probation officer.

18          Do I need to further delineate the testing that may

19   be implemented pursuant to that under Ninth Circuit law?  I

20   specifically require that such testing may include further

21   testing of further propensity or direction towards child

22   pornography or child abuse.

23          Further, you shall be required to contribute to the

24   cost of services for such treatment as approved and directed by

25   the probation officer based on your ability to pay.

1          Fourth, debt obligations.  You shall be prohibited

2    from incurring new credit charges, opening additional lines of

3    credit or negotiating or consummating any financial contracts

4    without the approval of the probation officer.

5          Fifth, access to financial information.  You shall

6    provide the probation officer access to any requested financial

7    information, including personal income tax returns,

8    authorization for release of credit information and any other

9    business, financial information in which you have a control or

10   interest.

11         Sixth, victim witness prohibition.  You shall not

12   have contact, directly or indirectly, with any victim or

13   witness in this instant offense unless under the supervision of

14   the probation officer, and that includes any viewing of videos

15   or pictures of victims.

16         Seven, minor prohibition.  You shall not associate

17   with persons under the age of 18, except in the presence of a

18   responsible adult who is aware of the nature of your background

19   and current offense and who has been approved by the probation

20   officer.

21         Eight, sex offender treatment.  You shall

22   successfully complete a treatment program for sex offenders

23   which may include polygraph, truth verification testing or

24   other physical verification testing as approved by the

25   probation officer.

1            Number nine, computer pornography prohibition.  You

2    shall neither possess nor have under your control any matter

3    that is pornographic as defined in 18 U.S.C. Section 2256(2) or

4    that depicts, suggests or alludes to sexual activity of minors

5    under the age of 18.  This includes but is not limited to any

6    matter obtained through access to any computer or any material

7    linked to computer access or use.

8            Ten, pornography prohibition.  You shall not own,

9    possess, use, view or read any pornographic material or

10   frequent any place that is involved with pornography as defined

11   in 18 U.S.C. Section 1156(2).

12           Number 11, computer restriction and monitoring.  You

13   shall provide the probation officer with accurate information

14   regarding your entire computer system, including all related

15   digital devices with memory and all passwords and Internet

16   Service Providers.  You shall allow the installation of any

17   software or hardware on your computer by the probation officer,

18   and you shall abide by all rules of the computer restriction

19   and monitoring program's agreement.

20           In light of a finding that I really think this poor

21   gentleman is incapable of resisting if he has computer access,

22   I'm wondering whether I ought to add an additional condition

23   that he's prohibited from having any computer that's

24   interconnected with the Internet.

25           **PROBATION OFFICER BECKNER:**  Your Honor, there's been

1   a lengthy history in this district in particular as to what

2   constitutes a computer, a digital device.

3          **THE COURT:** Right.

4          **PROBATION OFFICER BECKNER:** And there's been argument

5   that the use of an ATM machine is the use of a computer, and

6   that is why the special condition has evolved into the

7   restriction and monitoring --

8          **THE COURT:** Uh-huh  I think what I'll do --

9          **MS. KOPPE:** -- rather than total prohibition.

10          **THE COURT:** -- subject to your objection is I will

11   impose an additional condition that he's prohibited from

12   possessing or using any computer device that's interconnected

13   with the Internet which is capable of displaying any image --

14   any image.  That's the way I'll phrase it.

15          So you just can't use a computer device, whether it's

16   a Smartphone, cell phone.  You can use a cell phone, but if

17   it's a Smartphone that is interconnected with the Internet,

18   which they often are, that is used or capable of viewing

19   images, you're prohibited from using that.

20          So you can use a cell phone, but it can't be one that

21   can take pictures or download pictures or view pictures.

22          And finally, reporting to the probation officer after

23   release.  You shall report to the probation office in the

24   district to which you are released within 72 hours of discharge

25   from custody.

1    In your plea agreement, sir, you did waive rights to

2  appeal conviction and sentence.  Nevertheless, I advise you

3  that some appellate rights cannot be waived.  To the extent you

4  wish to entertain those, you have I advise you ten days to file

5  a notice of appeal.  If you cannot afford it, an attorney would

6  be appointed to represent you in the appeal and the transcript

7  of the recording of this case prepared at Government expense.

8    Any other requests or additions?

9    **MS. KOPPE:**  Your Honor, I'm not certain if you signed

10  the final order of forfeiture.

11    **THE COURT:**  Without objection, I'll enter that at

12  this time.

13    **MR. LEVENTHAL:**  And, your Honor, my client had asked

14  that the Court recommend that he be placed at a facility in

15  North Carolina.  Apparently, there's a facility in North

16  Carolina that houses certain inmates such as my client.

17    **THE COURT:**  Uh-huh.

18    **MR. LEVENTHAL:**  I understand it's just a

19  recommendation, and the Court has no authority over Bureau of

20  Prison and I informed my client of that.

21    **THE COURT:**  Right.  They'll properly designate.

22    Any objection?

23    **MS. KOPPE:**  No, your Honor; and for the record, that

24  facility's name is Butner.

25    **THE COURT:**  Okay.  I'll make that recommendation.

42

1          **MR. LEVENTHAL:**  Thank you, your Honor.

2          **THE COURT:**  Thank you.  Thank you, Mr. Hoffman.

3          **PROBATION OFFICER BECKNER:**  Your Honor, may I present

4    the Defendant with --

5          **THE COURT:**  Would you, please?  Uh-huh.

6          Thank you, counsel.

7          **MR. LEVENTHAL:**  Thank you, your Honor.

8          **(This proceeding was adjourned at 4:24 p.m.)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.

_____          _____July 26, 2010___

TONI HUDSON, TRANSCRIBER